Argued November 19, affirmed December 24, 1969

# STATE OF OREGON, *Respondent, v.*
# HOWARD CURTISS OLSON,
## *Appellant.*

462 P. 2d 681

*William M. McAllister,* Portland, argued the cause for appellant. With him on the briefs were Davies, Biggs, Strayer, Stoel & Boley, Portland.

*Jacob B. Tanzer,* Solicitor General, Salem, argued

the cause for respondent. With him on the brief was George Van Hoomissen, District Attorney, Portland.

FORT, J.

Defendant was convicted by the court, sitting without a jury, of the crime of illegal possession of narcotics. ORS 474.020. He appeals, asserting as his sole assignment of error the denial of his motion to suppress evidence.

On the evening in question the police held a valid warrant for the arrest of one Dennis Hartman on a charge of facilitating the sale and possession of marihuana committed in another county. Pursuant to a tip that Mr. Hartman was occupying the premises in question, four officers went there about 11 p.m. One officer, wearing old clothes, went to the front door, which was up one flight of stairs. The others stationed themselves either at the foot of those stairs or at the back door. The first officer then knocked at the door. It was opened by an unidentified female person. The officer asked if Dennis Hartman was there, referring to him as "Denny" or "Uncle Denny." She told him to wait and disappeared back into the apartment. She left open the door, which debouched through a short hallway into the living room. Shortly thereafter Mr. Hartman appeared at the door. There was conflict in the evidence as to what happened next. The trial court, however, as the trier of fact, found:

"* * * It is my understanding and interpretation of the evidence that the officer testified that when Hartman came toward the door, the officer asked him if he was .Denny, and .he said he was. The officer then testified that he showed him his badge and said he had a warrant for · him,· and

stepped inside and took him by the arm and placed him under arrest.

"\* \* \* I would construe it that the officer did announce his identity and his purpose, and that he then stepped through the open door to take physical custody of the man. I think he was entitled· to do so, and *that was the basis for my ruling*." (Emphasis supplied.)

■ Both the arguments and briefs assume that the officer did not announce either his identity or that he had a warrant for Hartman's arrest before he "crossed the threshold" and took him into custody. Since, however, there is substantial evidence to support the above quoted express finding by the court, we are bound by it.

The officers at the foot of the stairs, having heard the first officer arrest Mr. Hartman, immediately came up the stairs to enter the premises. One of them actually had the warrant. Immediately following his arrest Mr. Hartman, still standing in the hallway, twice announced in a loud voice he wished to see the warrant. Substantially simultaneously the officers, by then in or entering the hallway, smelled smoke which they identified as coming from burning marihuana. They also observed, in their direct line of vision from the hallway, a group of three men who, while smoking, were seated in a semicircle on the living room floor. In addition one of them was in the act of passing a strainer containing a grasslike material to one of the others. Mr. Hartman's announcements first froze the festivities and then were followed by sounds of alacritous activity among the group of men seated on the living room floor. Its members galvanized themselves into instant flight toward the back door.

The defendant, who was a guest of Hartman, was

one of these three men. The officers arrested him at the back door in the act of flight. He was searched at that time. A vial of marihuana was discovered on his person.

The motion to suppress asserts that in crossing the threshold of the residence through the open door to arrest Mr. Hartman, the officers violated defendant's Fourth Amendment rights. Defendant asserts that as a guest he has standing to raise this question (*Jones v. United States*, 362 US 257, 261, 80 S Ct 725, 4 L Ed 2d 697, 78 ALR2d 233 (1960)), even though his arrest arose out of an offense totally unrelated to that which led to issuance of the warrant against Mr. Hartman. The state, in its brief, concedes that the defendant has standing here to raise the Fourth Amendment challenge. We, therefore, neither consider nor decide that question.

The question then is whether or not the arrest of Mr. Hartman was lawful. The defendant concedes that if Hartman's arrest was lawful, his own arrest and the search and seizure incident thereto were valid.

■ The defendant contends that in addition to identifying himself to Mr. Hartman as a policeman and informing him of his possession of the warrant for his arrest, the officer was required to ask permission of Mr. Hartman to enter the apartment before he might lawfully either reach or step across the threshold and take him into custody.

Our statute provides:

"An arrest is made by an actual restraint of the person of the defendant or by his submission to the custody of the officer." ORS 133.250.

There is no contention here that Mr. Hartman vol-

untarily submitted himself to the custody of the officer. It is rather that the officer neither asked him if he would voluntarily submit to his custody nor allowed him time to indicate by act or words whether or not he would voluntarily submit himself to the officer's custody before he crossed the threshold to effectuate an actual restraint of Mr. Hartman.

In the leading common law case of *Burdett v. Colman,* which involved the duties of an officer in executing a warrant of arrest for a man in his own home, 14 East 163, 190, 104 Eng Rep 563, 573-74 (KB 1811), Lord Ellenborough described the common law rule:

> "*   *   * The first duty of the officer, who is entrusted with the execution of process, is to take care that it is executed effectually, and with as little injury to the individual or to the public as may be *   *   *." 104 Eng Rep at 573-74.

Defendant claims the arrest of Mr. Hartman was effectuated in violation of the "knock and announce" rule. *Semayne's Case,* 5 Co Rep 91 a, 77 Eng Rep 194 (KB 1603); *Miller v. United States,* 357 US 301, 78 S Ct 1190, 2 L Ed 2d 1332 (1958); *Sabbath v. United States,* 391 US 585, 88 S Ct 1755, 20 L Ed 2d 828 (1968); *State v. Cortman,* 251 Or 566, 446 P2d 681 (1968), cert den 394 US 951 (1969).

In the latter case the Oregon Supreme Court discussed Oregon's "knock and announce" law and stated:

> "Where, as here, the court found that the officers made the required announcement, we believe that the purposes of the statute were served and that it would be unrealistic to require the officers to delay their entry for a fixed period of time after making their presence and purpose known. The reasonableness of the officers' delay in a given set of circumstances will depend upon a number of

factors, including the likelihood of destruction of evidence, danger to the officers, or danger to others. * * *" 251 Or at 570-71.

Here, too, the officer knocked, waited outside the opened door for some time for Mr. Hartman to come, identified himself as an officer, related the existence of the warrant and then stepped into the hallway to make the arrest by effectuating "an actual restraint" of Mr. Hartman while he was standing there.

Defendant relies heavily on *People v. Rosales,* 68 Cal2d 299, 66 Cal Rptr 1, 437 P2d 489 (1968). In that case, however, there was no attempt to comply at all with the "knock and announce" rule. There the officers without any warning simply opened the front door, walked in and arrested the defendant while he was seated with his back to them at his own kitchen table.

The Fourth Amendment so far as here relevant provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against *unreasonable* searches and seizures, shall not be violated * * *." (Emphasis supplied.) U. S. Const. amend. IV.

We hold that neither the arrest of Mr. Hartman nor the search of the defendant was "unreasonable" within the meaning of the Fourth Amendment. It follows, then, that the motion to suppress made by this defendant was properly denied.

The judgment is affirmed.