THE STATE OF OHIO, APPELLEE, *v.* FURRY, APPELLANT.
THE STATE OF OHIO, APPELLEE, *v.* COHN, APPELLANT.

[Cite as State v. Furry (1971), 31 Ohio App. 2d 107.]

108

(Nos. 1002 and 1003—Decided August 5, 1971.)

*Mr. Daniel T. Spitler*, prosecuting attorney, for appellee.

*Mr. Jack Gallon* and *Mr. M. Shad Hanna*, for appellants.

BROWN, J. This is an appeal on questions of law by defendant Eric Furry, appellant herein, from a conviction by a jury on four counts in an indictment charging narcotics violations contrary to R. C. 3719.42, 3719.43, 3719.-47 and 3719.101, which allegedly occurred June 1, 1970. A similar appeal was lodged by defendant Charles Cohn, the other appellant herein, from a conviction by a jury on three counts in an indictment charging violation of R. C. 3719.09, 3719.47 and 3719.101 and growing out of the same narcotics raid on June 1, 1970, at 519 Thurstin Avenue, Bowling Green, Ohio.

Both defendants challenge in four assigned errors the validity of their convictions by assigning as the reason that the search warrant was unlawfully executed and the search unlawfully made because the officers did not knock and announce their identity and purpose before opening the unlocked screen door and entering the house; that the warrant issued for the search of the house occupied by defendants was not based upon probable cause; that such warrant was issued by a magistrate who had no power to issue it because he was not a detached (impartial) magistrate; and that the narcotics statutes under which defend-

ants were prosecuted are arbitrary and unconstitutional.

The first claimed error by defendants is that the search warrant was unlawfully executed by the police officers in that they failed to knock and announce their identity and purpose before entering and searching the house occupied by defendants. The salient facts developed at the hearing on the motion to suppress the evidence seized were as follows.[1] Three officers approached the front door and

---

[1]Lieutenant William Fox testified:

"Q Now, after you arrived at this address, just exactly what transpired? * * *

"A * * * So we sent a couple of the guys to the back door and we went to the front. As we approached the house, it was raining, they had the windows up and they looked out and seen us coming; and we yelled at them it was the police and the door was open. It was just a screen door and then we entered the house. * * *

"Q And is it at the time when you saw these people or person looking that you hollered?

"A Well, shortly after that, yeh. We identified ourselves as to who we were.

"Q Who did the identifying?

"A The two officers that went to the front door. * * *

"Q You just stated you were police?

"A Right. * * *

"Q And how many—is there an outer door and an inner door for this particular doorway?

"A Yes, I believe so; but at that time there was only the screen door and there was no inner door, it was open.

"Q Was the screen door latched?

"A No.

"Q You just pulled it open?

"A Right.

"Q And this was after that you hollered police?

"A Right. * * *

"Q Did you walk or run?

"A Well, we ran when we got that close, because they stood up and we wanted to keep them contained in the living room because we knew what we were looking for was in the rear bedroom and we didn't want anyone to get to that room. * * *

"Q And you didn't stop and knock or wait for someone to answer the door?

"A No, they didn't get to the door. They were standing right there at the living room at the door.

"Q You didn't stop, you just ran on into the house?

two officers went to the rear of the house to prevent escape. The three officers approaching the front door, as they neared the front porch, saw occupants seated in the front living room. The occupants, upon seeing the officers, stood up and the officers saw them move. Thereupon, the three officers hurried their approach to the front door shouting "Police, stay where you are!" Without any further announcement, they immediately opened the unlocked front screen door and entered the house. The search warrant and Miranda rights were read to defendants at once and the house was searched. Narcotics and related items were found and seized. The trial court denied the motion to suppress.

The facts are uncontradicted that the police announced their identity (authority) as police officers, but failed to announce their purpose—namely, to search the house occupied by defendants for narcotics and narcotics law violations—and thereupon opened an unlocked screen door and entered the house of defendants. In *Sabbath* v. *United States* (1968), 391 U. S. 585, where officers arrested a defendant without a warrant and searched his house after they knocked on his door, received no response and made an immediate entry thereupon through the unlocked door, it was held that the validity of a warrantless arrest must be tested by criteria identical to those embodied in 18 U. S. Code, Section 3109, which deals with an entry to execute a

---

"A Right. * * *

"Q Could you see the people inside the house scurrying around?

"A Yes, we seen them stand up in the living room and this is the reason that we went right on in without—

"Q Were they leaving the living room or making an attempt to leave?

"A Well, we couldn't be sure other than they got up and there was only small windows and you couldn't actually tell what they were doing other than that they had moved from a sitting position and * * *.

"A * * * it was raining, the occupants of the dwelling were in the living room watching television. We aproached the house and at which time one of the subjects seen us coming to the front door. We identified ourselves by yelling police officers, stay where you are. * * *"

search warrant.[2] Title 18, Section 3109, U. S. Code, is basically the same as R. C. 2935.12, Forcible Entry to Make Arrest, which governs the conduct of the police officers in the present cases.

This federal statute and its Ohio statutory counterpart have codified a common law rule of announcement, and this rule proscribes an unannounced intrusion into a dwelling, whether the officers break down a door, force open a chain lock on a partially opened door, open a locked door by use of a pass key, or, as here, open a closed but unlocked door. *Sabbath* v. *United States* (1968), 391 U. S. 585, at p. 590; *United States, ex rel. Ametrane,* v. *Gable,* (C. C. A. 3, 1968), 401 F. 2d 765; Blakey, *The Rule of Announcement and Unlawful Entry*: *Miller* v. *United States* and *Ker* v. *Calif.*, 112 Pa. L. Rev. 499 (1964); *cf. Miller* v. *United States* (1958), 357 U. S. 301 at 308, 309, footnote 8, which lists R. C. 2935.15, now R. C. 2935.12.

States other than Ohio have similarly applied the rule prohibiting unannounced intrusion into a dwelling as enunciated in *Sabbath, supra,* and have rested this rule upon the Fourth Amendment prohibition against unreasonable searches and seizures. *Commonwealth* v. *McCloskey* (1970), 217 Pa. Super 432, 272 A. 2d. 271; *Commonwealth* v. *Newman* (1968), 429 Pa. 441, 240 A. 2d. 795; *State* v. *Monteith* (Ore. App. 1970), 477 P. 2d. 224; *cf., Ker* v. *California*

---

[2] In *Sabbath* v. *United States* (1968), 391 U. S. 585, the relevant federal statute, Title 18, Section 3109, U. S. Code, provided:

The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.

The comparable Ohio Statute, R. C. 2935.12, provides:

"When making an arrest or executing a warrant for the arrest of a person charged with an offense, or a search warrant, the officer making the arrest may break down an outer or inner door or window of a dwelling house or other building, if, after notice of his intention to make such arrest or such search, he is refused admittance, but an officer executing a search warrant shall not enter a house or building not described in the warrant."

(1963), 374 U. S. 23; *Mapp* v. *Ohio* (1961), 367 U. S. 643; and *State* v. *Vuin* (Ohio 1962), 185 N. E. 2d 506.[3]

One United States District Court has held that the principle of law that one has the right to know the identity and *purpose* of a person advancing upon one's doorstep derives not from statute, but from the Fourth and Fourteenth Amendments. *United States* v. *Blank* (E. D. Ohio, 1966), 251 F. Supp. 166. *Cf., People* v. *Gastelo* (1967), 67 Cal. 2d 586, 432 P. 2d 706.

The state contends that compliance with R. C. 2935.12,

---

[3]Other cases in and outside Ohio, and in addition to the Pennsylvania, Oregon and California cases cited in the body of the opinion, which have applied the *Sabbath* holding as a Fourth Amendment Constitutional restriction in state court criminal proceedings are as follows:

*State* v. *Olson* (Or. App. 1969), 462 P. 2d 681.

*Duke* v. *Superior Court of Los Angeles County* (1969), 82 Cal. Reptr. 348, 461 P. 2d 628.

*People* v. *Bradley* (1969), 81 Cal. Reptr. 457, 460 P. 2d 129.

*Greven* v. *Superior Court of Santa Clara County* (1969), 78 Cal. Reptr. 504, 455 P. 2d 432.

*People* v. *Floyd* (1970), 26 N. Y. 2d 558, 260 N. E. 2d 815, and see Appellate Division decision in 312 N. Y. S. 2d 193.

*State* v. *Parker* (1969), 283 Minn. 127, 166 N. W. 2d 347.

*Dyton* v. *State* (Del. 1969), 250 A. 2d 383 (there is no Delaware statute requiring announcement; Delaware follows the common law rule of Semayne's case which is the historical basis discussed in *Sabbath, supra*).

*Riley* v. *State* (Del. 1969), 249 A. 2d 863.

*Mullaney* v. *State* (1968), 5 Md. App. 248, 246 A. 2d 291.

*Cf. United States* v. *Beale* (C. C. A. 5, 1971), 436 F. 2d 573.

*United States* v. *Harris* (D. C. Cir. 1970), 435 F. 2d 74.

*People* v. *Rosales* (1968), 66 Cal. Reptr. 1, 437 P. 2d 489.

*State* v. *Johnson* (1968), 16 Ohio Misc. 278.

*Ker* v. *California* (1963), 374 U. S. 23 at 57 (ambiguous conduct of defendant, no excuse for non-compliance with requirement to announce identity and purpose before entry) and on the same point see *Wong Sun* v. *United States*, 371 U. S. 471.

*United States* v. *Mendez* (C. C. A. 5, 1971), 437 F. 2d 85.

*State* v. *Joseph* (1971), 25 Ohio St. 2d 95 (sufficiency of search warrant must be tested by federal constitutional standards prescribed by United States Supreme Court).

*Woods* v. *United States* (D. C. Cir. 1956), 240 F. 2d 37.

*United States, v. Poppitt* (D. C. Cir. 1956), 227 F. Supp. 73.

which requires an announcement of purpose and identity, is excused where the officers are in peril of bodily harm (*Read* v. *Case* (1822), 4 Conn. 166, 10 Am. Dec. 110), or where the persons to be arrested or their house searched are fleeing or attempting to destroy evidence (*People* v. *Maddox* (1956), 46 Cal. 2d 301, 294 P. 2d 6). This is a correct statement of the law. The state argues that one or more of the foregoing exigent circumstances excusing compliance with the statute requiring announcement of purpose and identity exists in this case. We disagree. The conduct of the defendants in this case does not warrant the conclusion that the officers held a reasonable belief they were in danger of bodily harm, or that the defendants were trying to escape or destroy evidence. *Ker* v. *California* (1963), 374 U. S. 23, at 57; *Wong Sun* v. *United States,* 371 U. S. 471; *Miller* v. *United States* (1958), 357 U. S. 301; *Sabbath* v. *United States* (1968), 391 U. S. 585 at 591, headnote 8.

We conclude, therefore, that the conviction of both defendants should be reversed because of an invalid execution of the search warrant by the police officers who failed to announce their purpose before entering the house of defendants through an unlocked but closed screen door.

The next claimed error is that the affidavit for the search warrant[4] in this case was triply defective because

---

[4]The affidavit for a search warrant in the present cases, in substance, stated as follows:

"Before me H. Richard Dunipace, Judge Bowling Green Municipal Court personally appeared Ptl. William A. Fox, Bowling Green City Police Department who being duly sworn according to law, deposes and says that on or about the 1st day of June 1970 at the County of Wood, one Charlie Cohn, Whitey Doe and Eric Furry had and still has in their possession, the following personal property for which search authorization and seizure is sought, to-wit: narcotic drug, to-wit: marijuana and hallucinogen, to-wit: THC (Tetra Hydrol Cannabionol) and/or PCP (Phencyclidine). Knowing the same to be in violation of Sections 3719.09 and 3719.44 (B), Ohio Revised Code. And that said complainant believes and has good cause to believe that said property, or some part thereof, is concealed in a residence located at 519 Thurstin Avenue, Bowling Green, Ohio, said residence described

it failed to meet the tests established by the United States Supreme Court in *Spinelli* v. *United States* (1969), 393 U. S. 410, and *Aguilar* v. *Texas* (1964), 378 U. S. 108, in these three particulars:

1. The reliability of the informant was not demonstrated or stated;

2. The underlying circumstances necessary to explain the source of the information of the informant and that the informant's information was credible were not stated;

3. A mere averment of continued police surveillance is no factor in determining probable cause.

---

as a frame asbestos shingle, conventional roof, located on the west side of Thurstin Avenue. Complainant further avers the facts upon which such belief is based are: See attached list marked Exhibit 'A' which is incorporated herein by reference as though fully set forth.

"Ptl William A. Fox

(Signed) (Affiant)
"Sworn to before me and subscribed in my presence this 1st day of June 1970

"Richard Dunipace

(Signed) Judge
BOWLING GREEN MUNICIPAL COURT

"EXHIBIT 'A'

"1. Information received from a police informant who has previously given truthful, accurate and reliable information who states that T. H. C. ie, Tetra Hydrol Cannabinol and/or PCP ie, Phencyclidine is unlawfully being possessed and dispensed from the residence at 519 Thurstin Avenue, Bowling Green, Ohio,

"a. That further information reveals the above said substance can be found in the southwest bedroom of the residence at 519 Thurstin Avenue, said bedroom occupied by an individual named Eric Furry and more specifically said illegal substance contained in the second drawer of Eric's dresser. (See attached diagram drawn by above said police informant.)

"2. The above said informant further states that marijuana is possessed and being dispensed from 519 Thurstin Avenue, Bowling Green, Ohio.

"3. Further information received from continual surveillance of the above said premises (519 Thurstin Avenue, Bowling Green, Ohio) by police officers verify that the above is truthful and accurate.

"519 Thurstin Avenue"

(Diagram of the floor containing the bedroom and the dresser where the narcotics were found.)

The reliability of the informant was stated in the affidavit in *Aguilar, supra* at 109, inter alia, merely, as follows:

"Affiants have received reliable information from a credible person and do believe * * *."

In the cases here the affidavit goes further and states, inter alia:

"Information received from a police informant who has *previously* given truthful, accurate and reliable information who states that T.H.C. * * *." (Emphasis ours.)

The affidavit contains a sketch of one floor of the dwelling and some of its furniture and pinpoints the location of the narcotics. Thus, the affidavit in the case before us sufficiently states and demonstrates the reliability of the informant. *Spinelli* v. *United States, supra; Giordenello* v. *United States* (1958), 357 U. S. 480. The affidavit in the present case meets the tests of sufficiency and to some degree resembles the affidavit held sufficient in *Jones* v. *United States* (1960), 362 U. S. 257.

The affidavit sufficiently states the underlying circumstances relied upon by the informant providing the information and the circumstances necessary to explain the source of his information, and also contains facts from which the affiant could and did conclude that the informant was creditable and his information reliable. It does this by stating that the informant previously gave truthful, accurate and reliable information, and incorporating a sketch of one floor of the house and the location of the illicit narcotics. This sketch could have been made only if underlying circumstances existed to give a source of information to the informant. These elements or underlying circumstances from which the informant concluded that narcotics were where he sketched them to be offered the magistrate issuing the search warrant a reason in support of the informant's conclusion and explains why the informant's source of information was reliable and enabled the magistrate to know he was relying on something more substantial than casual rumor circulating in the underworld of

narcotics or an accusation given substance merely by the existence of an individual's general reputation. *Spinelli* v. *United States* (1969), 393 U. S. 410, at 416. A magistrate, when confronted with such detail, could reasonably infer that an informant had given his information in a reliable way and that probable cause for the issuance of the search warrant existed. *Cf. Draper* v. *United States* (1959), 358 U. S. 307; and *United States* v. *Ventresca* (1965), 380 U. S. 102.

In the present case, the allegations in the affidavit concerning continued surveillance of the premises by the police verifies criminal narcotics activity and is corroborative of criminal activity. On the other hand, the Federal Bureau of Investigation's surveillance of the defendant's premises contained no suggestion of criminal conduct in *Spinelli* v. *United States, supra* at 418.

The affidavit for a search warrant should be analyzed from a common sense point of view and in its entirety in determining its sufficiency, and there should be no requirement that it be an exercise in an essay writing contest. *United States* v. *Ventresca, supra* at 108, and *McCray* v. *Illinois* (1967), 386 U. S. 300, at 311; *United States* v. *Harris*, 403 U. S. 573, decided by U. S. Supreme Court June 28, 1971.

Thus, we conclude that the affidavit for a search warrant was sufficient to support the issuance upon probable cause of a search warrant by the magistrate.

The defendant next complains that the search warrant was invalid because it was issued by a judge precluded by law from doing so and was not issued by a detached magistrate. The judge in this case serves as a prosecuting attorney in a municipality where that municipal court's jurisdiction is territorially distinct from the territorial jurisdiction where the judge who issued the search warrant presides. This judge also is a substantial part-owner in the premises for which the warrant was issued.

The argument that the judge issuing a search warrant is not authorized by law to issue it because he is not

a detached magistrate is without merit. The argument is based on an interpretation of the Fourth Amendment of the United States Constitution and on Section 14, Article I of the Ohio Constitution. The rule deduced therefrom is that a search warrant must be issued upon probable cause, supported by oath or affirmation and must be issued by a neutral and detached magistrate, that is, a person exercising judicial power, and may not be issued by a law enforcement officer having no judicial power. *Johnson* v. *United States* (1948), 333 U. S. 10.

The defendants argue that the narcotics statutes under which they were convicted were arbitrary and unconstitutional. This contention is untenable. From the time the Harrison Act of 1914 was held constitutional in *United States* v. *Doremus,* 249 U. S. 86, until the present day the Uniform Narcotic Act of Ohio (R. C. Chapter 3719), has been held valid and constitutional and is a valid exercise of the police power of the state in the furtherance of the public safety, health, morals and general welfare of the body politic. *Spence* v. *Sacks* (1962), 173 Ohio St. 419; *Miller* v. *State* (1920), 13 Ohio App. 171; *Curtiss* v. *Cleveland* (1955), 74 Ohio Law Abs. 499.

The fifth assignment of error is without merit and does not warrant discussion.

The trial court, upon remand, should order all evidence seized as a result of the execution of the search warrant or resulting from the illegal search and seizure suppressed.

The judgment of the Common Pleas Court of Wood County is reversed as to the convictions on all counts of both defendants, and both causes are remanded to that court for a new trial.

*Judgment reversed.*

POTTER, P. J., and WILEY, J., concur.