GASTON, Appellant, and Cross–Appellee,

v.

CITY OF TOLEDO et al., Appellees and Cross–Appellants.

[Cite as *Gaston v. Toledo* (1995), 106 Ohio App.3d 66.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–94–172.

Decided Aug. 25, 1995.

68

*George R. Smith, Jr.,* for appellant and cross-appellee.

*Geoffrey H. Davis,* for appellees and cross-appellants.

*Per Curiam.*

This case is an appeal from a judgment of the Lucas County Court of Common Pleas. Appellant, Violet Gaston, is appealing the trial court's grant of a directed verdict in favor of appellees, the city of Toledo; Police Chief Marti Felker, Detectives Michael McGee and Paul Hickey; Sergeants Robert R. Case, Donald D. Kenny, Jr., and Daniel M. Schultz; Officers James D. Brown, Lance Daggett, Bruce Helppie, Harris J. Marquis, and Michael P. Murphy; and Lieutenant Warren E. Phillips. Further, Sergeants Case, Kenny, and Schultz; Officers Brown, Daggett, Helppie, Marquis, and Murphy; Detective Hickey and Lieutenant Phillips, as a cross-assignment of error, are appealing the trial court's denial of their motion to dismiss for lack of personal jurisdiction. For the reasons discussed below, we reverse the judgment of the trial court.

The facts of this case are as follows. In 1987, the City of Toledo Police Department formed a special unit known as the "Entry Team." The Entry Team was formed to conduct tactical entries, drug raids, surveillance work and other special duties similar to a S.W.A.T. team. Lieutenant Phillips as the directed policing coordinator was responsible for the supervision and training of the Entry Team.

In October 1989, Gaston was residing in Apartment No. 2 of an eight-unit apartment building located at 2440 Maplewood Avenue, Toledo, Ohio. A common front porch spanned the front of the apartment building. The only entrance to the apartment building was through a security door which operated on an intercom and buzzer system. Beyond the security door was a hallway off of which were located the individual apartments. Gaston's apartment, along with three other apartments, was located on the first floor of the apartment building.

On October 23, 1989, a search warrant was issued by the Toledo Municipal Court authorizing officers to search for illegal drugs at Apartment No. 2, 2440

Maplewood Avenue. The search warrant was based upon a police officer's affidavit stating that a confidential, reliable informant had purchased cocaine for $50 on October 15, 1989, at this location.

On October 24, 1989, police officers executed the search warrant using the Entry Team. The Entry Team was led by Sergeant Case, and consisted of Sergeant Kenny, Jr.; Officers Brown, Daggett, Helppie, Marquis, and Murphy; and Detectives McGee, Hickey, and Schultz.

The only evidence concerning the specific events of October 24, 1989, was Gaston's testimony. None of the officers who testified at trial had any recollection of the search of Gaston's apartment. The officers could only testify as to their usual and customary practices used to execute search warrants for illegal drugs. However, Gaston testified that she was standing in her living room talking with a friend when she heard a loud noise on the porch in front of the apartment building. She went to her living room window and opened the curtains to see what was happening. When she opened the curtains, she testified that a police officer pointed a shotgun at her and told her, "Get the fuck away from the window."

Gaston testified that she went back to the living room where she continued her conversation with her friend. Gaston then heard a series of booms at the security door. Gaston next heard another boom which she assumed was police officers breaking the door of the apartment across the hall from her. At the second boom, the door to her apartment fell off its hinges onto the floor of her living room. Gaston testified that she heard no knock on the door nor did she hear any announcement of identity or purpose by the police officers. She further testified that she was standing only a few steps away from her apartment door at the time it was battered into her living room.

As the door fell into her living room, Gaston testified that she started to walk back into the bedroom where the children were. However, as the police officers came into her apartment with guns pointed at her, they ordered her to the floor before she could reach her children. Gaston testified that police officers dragged her by the collar, placed a foot on her head and handcuffed her while she was lying on her living room floor. She also testified that she could see her children from where she was lying on the floor and that they were in their room scared, screaming and crying.

Police searched Gaston's apartment; however, they uncovered no narcotics or weapons. At the time of the search, police officers ran a records check on Gaston. The records check revealed that there was an outstanding bench warrant that had been issued for Gaston's failure to appear for a seatbelt violation. The officers arrested Gaston on the bench warrant and took her to jail, where she spent the night. The next morning, after her release from jail, Gaston

returned to her apartment. Because nothing had been done to secure her apartment after police officers broke down the door, Gaston discovered her apartment had been ransacked and her belongings had been taken by unidentified persons during the night.

On October 25, 1990, Gaston filed a complaint against the city of Toledo, Detective McGee, Police Chief Marti Felker and "unidentified and unknown city of Toledo police officers." Her complaint alleged violation of her civil rights under Section 1983, Title 42, U.S. Code, false arrest and imprisonment, assault and invasion of privacy. Gaston alleged that police officers violated the constitutional prohibition against unreasonable searches and seizures under the Fourth and Fourteenth Amendments to the United States Constitution and Article I of the Ohio Constitution. Specifically, Gaston alleged that the police officers failed to knock, announce themselves and be refused admittance before forcibly entering her home.

On December 21, 1990, an answer was filed with a caption that identified the defendants as "City of Toledo, et al." In the body of the answer, the answering parties were referred to only as "the Defendants." The defendants were not named in any other way.

On March 8, 1991, Gaston filed a request for interrogatories with the city of Toledo requesting that the police officers who participated in the search of Gaston's residence be identified. The city of Toledo failed to respond within twenty-eight days. Subsequently, Gaston's attorney contacted the attorney for the city and requested a response to Gaston's discovery request. No answers were forthcoming, and on August 8, 1991, Gaston filed a motion to compel discovery. On September 27, 1991, the city of Toledo filed a response to the discovery request and identified the police officers who had taken part in the search of Gaston's home as Sergeants Case, Kenny, Jr., and Schultz; Officers Brown, Daggett, Helppie, Marquis, and Murphy; Detective Hickey; and Lieutenant Phillips.

On March 10, 1992, Gaston filed a motion for leave to amend her complaint to name those police officers who were identified in the city of Toledo's discovery response. On April 2, 1992, the trial court granted Gaston's motion for leave to file her amended complaint.

On April 24, 1992, Sergeants Case, Kenny, Jr., and Schultz; Officers Brown, Daggett, Helppie, Marquis and Murphy; Detective Hickey; and Lieutenant Phillips filed a motion to dismiss Gaston's complaint against them. The police officers argued that Gaston's causes of action against them were time-barred because they had never been properly served with Gaston's amended complaint and further service of process had never been made. On January 19, 1993, the trial court denied the officers' motion to dismiss.

On October 18, 1993, the case proceeded to trial. At the close of the plaintiff's case in chief, the trial court granted a directed verdict in favor of the city of Toledo; Detectives McGee and Hickey; Police Chief Marti Felker; Sergeants Case, Kenny, Jr., and Schultz; Officers Brown, Daggett, Helppie, Marquis and Murphy; and Lieutenant Phillips. The trial court granted the directed verdict on the ground that police officers properly executed the search of Gatson's apartment.

It is from the granting of the directed verdict that Gaston raises the following sole assignment of error:

"The trial court erred in directing verdict for defendants' since an occupant's mere knowledge of the presence of the police immediately prior to their entry into her home is insufficient exigency to justify the police in dispensing the knock and announce requirement in executing a search warrant especially in light of uncontroverted evidence of record that the city of Toledo Police Department has adopted a departmental policy of automatically effecting forcible entry in execution of all search warrants for narcotics regardless of the circumstances."

Sergeants Case, Kenny, Jr., and Schultz; Officers Brown, Daggett, Helppie, Marquis and Murphy; Detective Hickey; and Lieutenant Phillips filed a cross-assignment of error from the trial court's denial of their motion to dismiss as follows:

"The trial court erred in denying the motion to dismiss of defendants, Sergeant Robert R. Case, Sergeant Donald D. Kenny, Jr., Officers James D. Brown, Lance Daggett, Bruce Helppie, Harris J. Marquis, Michael P. Murphy, Detective Paul Hickey, Sergeant Daniel M. Schultz and Lieutenant Warren E. Phillips, pursuant to Rule 12(B)(2), (5) and (6) of the Ohio Rules of Civil Procedure."

Gaston's assignment of error concerning the trial court's grant of the directed verdict will be addressed first. Essentially, Gaston argues that the trial court erred in finding that she had not suffered any constitutional deprivation regarding the search of her apartment.

Initially, this court would note that the trial court granted a motion for a directed verdict after the plaintiff's case in chief. A motion for a directed verdict is governed by Civ.R. 50(A)(4) which states as follows:

"When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

It is well settled that "[a] motion for directed verdict is to be granted when, construing the evidence most strongly in favor of the party opposing the motion, the trial court finds that reasonable minds could come to only one conclusion and that conclusion is adverse to such party." *The Limited Stores, Inc. v. Pan Am. World Airways, Inc.* (1992), 65 Ohio St.3d 66, 73, 600 N.E.2d 1027, 1033. Neither the weight of the evidence nor the credibility of the witnesses is to be considered by the trial court when considering a motion for a directed verdict. *Ruta v. Breckenridge–Remy Co.* (1982), 69 Ohio St.2d 66, 67–68, 23 O.O.3d 115, 115–116, 430 N.E.2d 935, 937. In *Ramage v. Cent. Ohio Emergency Serv., Inc.* (1992), 64 Ohio St.3d 97, 109, 592 N.E.2d 828, 837, the court stated that "if there is substantial competent evidence to support the party against whom the motion is made, upon which evidence reasonable minds might reach different conclusions, the motion must be denied." Keeping this standard governing directed verdicts in mind, we now turn to Gaston's assignment of error.

 Gaston essentially seeks redress for a violation of her constitutional rights under Section 1983, Title 42, U.S. Code. Section 1983 provides as follows:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

The United States Supreme Court has determined that local governing bodies can be sued under Section 1983 for depriving an individual of his or her constitutional rights. *Monell v. Dept. of Social Serv.* (1978), 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611, 635. The *Monell* court stated that "it is when execution of a government's policy or custom, whether made by its lawmakers or *by those whose edicts or acts may fairly be said to represent official policy,* inflicts the injury that the government as an entity is responsible under Section 1983." (Emphasis added.) *Id.* at 694, 98 S.Ct. at 2037, 56 L.Ed.2d at 638.

 Section 1983 not only prohibits constitutional deprivation through an official policy of a governing body but also prohibits constitutional deprivation through governmental "custom." In *Adickes v. S.H. Kress & Co.* (1970), 398 U.S. 144, 167–168, 90 S.Ct. 1598, 1613–1614, 26 L.Ed.2d 142, 160, the court held that customs and usages by governing bodies, even when "not authorized by written law, * * * could well be so permanent and well settled as to constitute a 'custom or usage' with the force of law."

 However, before this court need determine whether the city of Toledo had adopted an unconstitutional custom or usage, it must first be shown that there

was, in fact, a constitutional deprivation suffered by Gaston. See *Los Angeles v. Heller* (1986), 475 U.S. 796, 799, 106 S.Ct. 1571, 1573, 89 L.Ed.2d 806, 810–811. The United States Supreme Court in *Heller* specifically pointed out that "[i]f a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point." *Id.*

Gaston argues that the constitutional injury she suffered was a violation of the prohibition against unreasonable searches and seizures under the Fourth Amendment to the United States Constitution. Specifically, Gaston argues that the search of her apartment was unconstitutional because police officers failed to knock and announce their purpose before forcibly entering her apartment.

R.C. 2935.12(A) codifies the common-law rule prohibiting unannounced intrusions into a dwelling, known as the "knock and announce" principle, as follows:

"When making an arrest or executing an arrest warrant or summons in lieu of an arrest warrant, or when executing a search warrant, the peace officer, law enforcement officer, or other authorized individual making the arrest or executing the warrant or summons may break down an outer or inner door or window of a dwelling house or other building, if, *after notice of his intention to make the arrest or to execute the warrant or summons, he is refused admittance,* but the law enforcement officer or other authorized individual executing a search warrant shall not enter a house or building not described in the warrant." (Emphasis added.)

R.C. 2935.12(A) is mirrored in federal law under Section 3109, Title 18, U.S.Code, as follows:

"The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant."

Courts have long held that compliance with the knock-and-announce statutes is required to satisfy the protection against unreasonable searches and seizures under the Fourth and Fourteenth Amendments to the United States Constitution. See, generally, 3 LaFave, Search and Seizure (1987) 270–273, Section 4.8(a). In *State v. Furry* (1971), 31 Ohio App.2d 107, 113, 60 O.O.2d 196, 199, 286 N.E.2d 301, 305, this court held a violation of the knock-and-announce requirement under R.C. 2935.12 violated the Fourth Amendment prohibition against unreasonable searches and seizures. Further, it is well-settled law in the Sixth Circuit that the Fourth Amendment requires police officers to knock, announce their purpose, and be refused admittance before they may break down the door of a building to enter it. See *United States v. Francis* (C.A.6, 1981), 646 F.2d

251, 257; *Hall v. Shipley* (1991), 932 F.2d 1147, 1151 ("In the Sixth Circuit, however, it is 'clearly established' law that 'the Fourth Amendment forbids the unannounced, forcible entry of a dwelling in the absence of exigent circumstances.' *Francis*, 646 F.2d at 258."). Further, the United States Supreme Court in the recent opinion of *Wilson v. Arkansas* (1995), 514 U.S. ——, ——, 115 S.Ct. 1914, 1916, 131 L.Ed.2d 976, 979–981, specifically held that the knock-and-announce principle is an element of the Fourth Amendment's guarantee against unreasonable search and seizure. In *Wilson*, 514 U.S. at ——, 115 S.Ct. at 1918, 131 L.Ed.2d at 982, the court held as follows:

"Our own cases have acknowledged that the common-law principle of announcement is 'embedded in Anglo–American law,' *Miller v. United States*, 357 U.S. 301, 313 [78 S.Ct. 1190, 1198, 2 L.Ed.2d 1332, 1340] (1958), but we have never squarely held that this principle is an element of the reasonableness inquiry under the Fourth Amendment. We now so hold. Given the longstanding common-law endorsement of the practice of announcement, we have little doubt that the Framers of the Fourth Amendment thought that the method of an officer's entry into a dwelling was among the factors to be considered in assessing the reasonableness of a search or seizure." (Footnote omitted.)

However, courts have unanimously held that, where exigent circumstances exist, police officers' compliance with the knock-and-announce principle is excused. See *Furry*, 31 Ohio App.2d at 113, 60 O.O.2d at 199, 286 N.E.2d at 305; *Hall*, 932 F.2d at 1151. The United States Supreme Court in *Wilson*, 514 U.S. at ——, 115 S.Ct. at 1918, 131 L.Ed.2d at 982–983, reiterated its recognition that exigent circumstances would excuse a police officer's compliance with the knock-and-announce requirement.

The more troubling issue is what kind of facts constitute exigent circumstances. The *Wilson* court specifically held that "we leave to the lower courts the task of determining the circumstances under which an unannounced entry is reasonable under the Fourth Amendment." *Id.* at ——, 115 S.Ct. at 1919, 131 L.Ed.2d at 984. Therefore, this court must turn elsewhere for guidance as to determine what facts constitute exigent circumstances which excuse compliance with the knock-and-announce rule.

■ It is well settled law that where officers hold a reasonable belief that they are in danger of bodily harm or that suspects are trying to escape or destroy evidence, compliance with the knock-and-announce principle is excused. See, *e.g.*, *Furry*, 31 Ohio App.2d at 113, 60 O.O.2d at 199, 286 N.E.2d at 305. The more specific issue is whether, when police officers are executing a search warrant for narcotics, exigent circumstances always exist, and, thus, an unannounced forcible entry is always reasonable. A minority of courts have held that when officers are executing a search warrant for illegal drugs, exigent circumstances are always

established because of a general presumption that illegal drugs are easily disposed of and weapons are usually present (the "blanket approach"). See 3 LaFave, Search and Seizure (1987) 280–281, Section 4.8(d), and cases cited therein. The majority of courts have required something more in order to determine whether exigent circumstances exist. *Id.* In *Shipley*, 932 F.2d at 1151, the court explained the split among the jurisdictions regarding this issue as follows:

"There are two major schools of thought with respect to whether the possible destruction of drugs constitutes an exigent circumstance in search warrant cases. One approach suggests that unannounced, forced entries to execute a search warrant are always reasonable in narcotics cases on the ground that narcotics violators are normally on the alert to destroy any contraband at the first notice of an officer's presence. See *United States v. Tracy*, 835 F.2d 1267 (8th Cir.), cert. denied, 486 U.S. 1014, 108 S.Ct. 1750, 100 L.Ed.2d 212 (1988). The second approach requires some other reason in addition to the fact that narcotics could be disposed of quickly. See *United States v. Allen*, 675 F.2d 1373, 1382 (9th Cir.1980), cert. denied, 454 U.S. 833, 102 S.Ct. 133, 70 L.Ed.2d 112 (1981) (possibility of destruction of drugs plus other significant facts); cf. *Ker v. California*, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963) (upheld search when officers suspected drugs could easily be destroyed and that Ker may have been expecting police as they had chased him earlier in the day)."

In the leading case of *People v. Gastelo* (1967), 67 Cal.2d 586, 588, 63 Cal.Rptr. 10, 12, 432 P.2d 706, 708, the court specifically rejected the "blanket rule" using the knock and announce requirement in all cases where a search warrant is issued for narcotics. The *Gastelo* court, at 588–589, 63 Cal.Rptr. at 12, 432 P.2d at 708, held as follows:

"Under the Fourth Amendment, a specific showing must always be made to justify any kind of police action tending to disturb the security of the people in their homes. Unannounced forcible entry is in itself a serious disturbance of the security and cannot be justified on a blanket basis. Otherwise the constitutional test of reasonableness would turn only on practical expediency, and the amendment's primary safeguard—the requirement of particularity—would be lost. Just as the police must have sufficiently particular reason to enter at all, so must they have some particular reason to enter in the manner chosen."

Further, implicit in our decision in *Furry* is a rejection of the blanket rule. In *Furry*, police made an announced entry into a home in order to execute a search warrant for narcotics without any showing of other exigent circumstances. In *Furry*, 31 Ohio App.2d at 113, 60 O.O.2d at 199, 286 N.E.2d at 305, we held that "[t]he conduct of the defendants in this case does not warrant the conclusion that the officers held a reasonable belief they were in danger of bodily harm, or that

the defendants were trying to escape or destroy evidence." In addition, in *State v. DeFiore* (1979), 64 Ohio App.2d 115, 118, 18 O.O.3d 90, 92, 411 N.E.2d 837, 839, the court held that "the trial court correctly [declined] * * * to adopt a blanket exception to the knock and announce rule codified in R.C. 2935.12, based on the type of crime under investigation, as, for instance, in all narcotics or all gambling cases."

■ Today, we specifically reject a blanket rule that would permit unannounced, forcible entry in all cases where a search warrant has been issued for narcotics. We find the sounder view is that "announcement is not required if, before arriving to search, the police have particular reasons to reasonably believe in a particular case that evidence would be destroyed." *State v. Gassner* (1971), 6 Ore.App. 452, 461, 488 P.2d 822, 826. Such particularized reasons can involve evidence of any unusual activity, noise or conduct indicating the destruction of evidence is being attempted. See, *e.g.*, *Commonwealth v. Beard* (1983), 501 Pa. 385, 461 A.2d 790 (exigent circumstances established when a person approaching house upon seeing police ran into the house); *Davenport v. State* (Ind.1984), 464 N.E.2d 1302 (exigent circumstances where a person who came to door did not open it and ran when officer identified himself). Evidence of additional knowledge by police officers that the destruction of evidence will be attempted also demonstrates a particularized need establishing exigent circumstances. See, *e.g.*, *People v. Conner* (1979), 78 Ill.2d 525, 36 Ill.Dec. 672, 401 N.E.2d 513 (exigent circumstances established where police had information that buckets of water were kept near the toilet for ready disposal of narcotics); *State v. Sanchez* (1975), 88 N.M. 402, 540 P.2d 1291 (exigent circumstances established where informant advised police that defendant was prepared to flush heroin down the toilet).

■ However, mere observation of police officers is not sufficient to establish a particularized need. In *Furry* the occupants of the home to be searched observed police approaching their front porch just prior to the forcible entry. We ruled that this mere observation alone did not establish an exigent circumstance excusing the officers' compliance with the knock-and-announce principle. *Furry*, 31 Ohio App.2d at 113, 60 O.O.2d at 199, 286 N.E.2d at 305.

We turn now to the application of the law to the instant case. Gaston testified that police officers neither knocked nor announced themselves before breaking down the door to her apartment. The officers could not testify as to any particularized reason that they entered Gaston's apartment without knocking and announcing themselves, other than a general knowledge that evidence can be destroyed and weapons are often present in narcotics cases. Although Gaston observed police on the common porch of the apartment building, this fact does not demonstrate that Gaston knew that police were present to execute a search warrant at her own apartment, nor does it demonstrate any other particularized

reason for dispensing with the knock-and-announce rule. Therefore, we find there was no evidence to establish exigent circumstances that would excuse the officers' compliance with the knock-and-announce rule. Accordingly, we find that upon such evidence reasonable minds might reach different conclusions as to whether there was a particularized reason for the police officers' failure to observe the knock-and-announce rule.

Further, testimony of various police officers suggests that, when executing a search warrant for narcotics, police officers, as a matter of routine, fail to knock and announce at all or only identify themselves as police as they are forcing entry. Therefore, we find that upon such evidence reasonable minds might reach different conclusions as to whether the police department, as a matter of custom, violated that knock-and-announce principle. Because we find that reasonable minds could disagree as to whether the search of Gaston's apartment was an unconstitutional violation of her Fourth Amendment rights, the trial court erred in granting a directed verdict. Accordingly, Gaston's sole assignment of error is found well taken.

This court will now address the cross-assignment of error raised by Sergeants Case and Kenny, Jr.; Officers Brown, Daggett, Helppie, Marquis and Murphy; Detective Hickey; Sergeant Schultz and Lieutenant Phillips. The officers argue that the trial court erred in denying their motion to dismiss for failure to obtain service of process within the time allotted under the Civil Rules.

Gaston's state law claims are governed by a one-year statute of limitations. See R.C. 2305.11 (false arrest or imprisonment, one-year statute of limitations); R.C. 2305.111 (assault, one-year statute of limitations); R.C. 2305.10 (bodily injury, two-year statute of limitations). Gaston's federal claim under Section 1983, Title 42, U.S.Code, is governed by a state's general statute of limitations for personal injury actions, which in Ohio is two years. See *Owens v. Okure* (1989), 488 U.S. 235, 250, 109 S.Ct. 573, 582, 102 L.Ed.2d 594, 606. Gaston's causes of action arose on October 24, 1989 and Gaston's original complaint was timely filed on October 25, 1990. However, the original complaint only identified by name the city of Toledo, Detective McGee, Police Chief Marti Felker. The remaining defendants were identified only as "unidentified and unknown city of Toledo police officers."

On April 2, 1992, Gaston filed an amended complaint. For the first time, Case, Kenny, Jr., Brown, Daggett, Helppie, Marquis, Murphy, Hickey, Schultz, and Phillips were identified by name. Such amended complaint was filed well beyond the governing one and two-year statutes of limitations. However, Civ.R. 3(A) provides for an additional year to perfect service "if service is obtained within one year from such filing * * * upon a defendant identified by a fictitious

name whose name is later corrected pursuant to Rule 15(D)." Civ.R. 15(D), which governs service once an unknown defendant is identified, reads, in pertinent part, as follows:

"When the name [of an unknown party] is discovered, the pleading or proceeding must be amended accordingly. The plaintiff, in such case, must aver in the complaint the fact that he could not discover the name. The summons must contain the words 'name unknown,' and *a copy thereof must be served personally upon the defendant.*" (Emphasis added.)

Civ.R. 15(D) requires personal service upon a defendant who was initially designated as an unknown defendant in a complaint. In *Amerine v. Haughton Elevator Co.* (1989), 42 Ohio St.3d 57, 58, 537 N.E.2d 208, 209, the Ohio Supreme Court held that "Civ.R. 15(D) specifically requires that the summons must be served personally upon the defendant. In this case, service was performed by way of certified mail which is clearly not in accordance with the requirement of Civ.R. 15(D)." Only when a plaintiff meets the personal service requirement under Civ.R. 15(D) can he benefit by the one-year of additional time to perfect service under Civ.R. 3(A).

In the present case, Gaston discovered the names of Case, Kenny, Jr., Brown, Daggett, Helppie, Marquis, Murphy, Hickey, Schultz and Phillips on September 27, 1991. However, Gaston did not file an amended complaint naming the officers until April 2, 1992 and in fact never personally served any of these officers. Because service was never made pursuant to Civ.R. 15(D), we now examine whether there was any other means by which personal jurisdiction of the officers was established.

 In *Maryhew v. Yova* (1984), 11 Ohio St.3d 154, 156, 11 OBR 471, 472–473, 464 N.E.2d 538, 540, the Supreme Court of Ohio held that the only way valid personal jurisdiction over a defendant may be had is (1) by service of process upon the defendant, (2) by the voluntary appearance of the defendant, or (3) by a waiver of personal jurisdiction under the Rules of Civil Procedure.

In the present case, as we discussed above, Gaston never obtained service of process upon the officers. Further, the officers did not waive personal jurisdiction under the Civil Rules by failing to properly raise it. See Civ.R. 12(H) ("a defense of lack of jurisdiction over the person * * * is waived * * * if it is neither made by motion under this rule nor included in any responsive pleading * * * "). The only consideration remaining is whether the officers made a voluntary appearance at any time prior to the filing of their motion to dismiss.

The trial court found that such voluntary appearance was made by the officers when an answer was filed on December 21, 1990.

The answer filed on December 21, 1990 was captioned as follows:

"Violet M. Gaston, Plaintiff,

"-vs-

"City of Toledo, et al., defendants."

The first line of the answer reads "Now come the Defendants, by and through Counsel, and answer as follows * * *." There is no other designation of the parties filing the answer other than the term "the defendants." We find, as a matter of law, that such designation does not indicate that the individual officers made a voluntary appearance prior to the filing of their motion to dismiss. Accordingly, we find the cross-assignment of error well taken.

Upon consideration whereof, the judgment of the Lucas County Court of Common Pleas granting a directed verdict as to the city of Toledo, Police Chief Marti Felker, and Detective McGee is reversed. Further, the judgment of the Lucas County Court of Common Pleas denying the motion to dismiss of appellees Case, Kenny, Jr., Brown, Daggett, Helppie, Marquis, Murphy, Hickey, Schultz and Phillips is reversed. Pursuant to App.R. 12(B), Gaston's complaint as to appellees, Case, Kenny, Jr., Brown, Daggett, Helppie, Marquis, Murphy, Hickey, Schultz and Phillips is ordered dismissed with prejudice. This case is remanded to the trial court for further proceedings consistent with this decision. Costs assessed equally to appellant and to the appellees remaining in the case (Toledo, Police Chief Marti Felker and Detective McGee).

*Judgment accordingly.*

ABOOD, P.J., HANDWORK and GLASSER, JJ., concur.