JOURNAL ENTRY and OPINION
{¶ 1} Appellant Damon Clark appeals his conviction for aggravated murder and assigns the following errors for our review:
 {¶ 2} "I. The trial court erred when it denied appellant's request that the jury be instructed on the lesser included offenses of involuntary and voluntary manslaughter."
 {¶ 3} "II. There was insufficient evidence of prior calculation and design to support a finding of guilt for the offense of aggravated murder."
 {¶ 4} "III. The jury's verdict of guilty on the charge of aggravated murder was against the manifest weight of the evidence."
 {¶ 5} Having reviewed the record and pertinent law, we affirm Damon Clark's conviction. The apposite facts follow.
 {¶ 6} The Cuyahoga County Grand Jury indicted Clark on one count of aggravated murder with a three-year firearm specification. Clark's two brothers were indicted in the same case on the same charge. His brother Doug Clark was acquitted of the charge. In exchange for a guilty plea to aggravated assault, his brother Jimmie Clark agreed to testify on behalf of the State.[1]
 {¶ 7} At trial, Jimmie Clark testified that prior to the shooting of the victim, someone stole his brother Doug's car speakers. Sometime afterwards, he and his brothers met at their grandmother's house and discussed the theft and concluded Rayneel Reeves had committed the theft. Reeves was a known car thief who had previously repaired the speakers.
 {¶ 8} During the discussion, Jerdel Griffin and Marlon Bell drove by in Griffin's car. They were friends of Reeves. Doug Clark and Griffin argued, and a fist fight ensued. Damon Clark and Bell pulled the men apart and Griffin left with Bell.
 {¶ 9} However, approximately twenty minutes later, Griffin returned on foot along with his brother Jermel, Reeves, Dwayne Wilder and Reeves' brother, Tommie Smith. Griffin and Doug Clark fought again and the scuffle continued down the street. Jimmie Clark and Reeves then began to argue. Jermel Griffin returned to the area where Jimmie Clark and Reeves were. Thereafter, Reeves attempted to coerce Griffin and Jimmie Clark to fight. However, Jimmie Clark contended he only "exchanged words" with Griffin.
 {¶ 10} While Jimmie Clark argued with Griffin, he saw Damon Clark, with a gun in his hand, chasing Reeves. He heard shots and observed Damon Clark aim a gun at Reeves. Reeves fell to the ground. Damon Clark continued running toward Reeves and shot him as Reeves lay on the ground. Reeves' brother Tommie Smith then began shooting at Damon and Jimmie Clark. Jimmie Clark admitted that Damon Clark and Reeves had "problems" in the past, but he did not know what it concerned.
 {¶ 11} Officer Dwayne Duke testified that at approximately 11:30 p.m. he received a radio broadcast that shots were fired in the area of East 136th Street and Beachwood Avenue. When he arrived, the victim had already been taken to the hospital and a few spectators were present. He retrieved several shell casings from the scene. The shell casings were from a .38 caliber handgun and a .45 caliber handgun.
 {¶ 12} Doug Wilder testified he was a friend of the Clark brothers and knew that Doug Clark owned a .45 caliber handgun. Wilder was also friends with Reeves and Smith. According to Wilder, on the evening of the shooting, he, Reeves, and Smith were working on a car in his backyard. They went to East 137th Street and Beachwood Avenue around 11:00 p.m. to watch Griffin fight Doug Clark. Wilder saw Griffin and Doug Clark sparring and moving towards East 136th Street. He eventually lost sight of them and walked away, believing the fight was over. As he did so, he heard five to six gunshots. He hid in nearby bushes until the shooting stopped. He then peered from the bushes and saw Reeves lying on the ground with Damon Clark standing next to him pointing a gun at Reeves' back. Thereafter, Wilder observed Damon Clark flee in a vehicle with his two brothers.
 {¶ 13} Marlon Bell testified he knew all parties involved. He observed the fight between Doug Clark and Griffin earlier in the evening. During that earlier fight, Doug pulled out a .45 caliber handgun and handed it to Damon Clark. Damon Clark then handed the gun to his brother Jimmie Clark. When Bell attempted to break up the fight between Doug Clark and Griffin, Jimmie Clark hit Bell on the head with the gun. Jimmie Clark then handed the gun to Damon Clark, who walked away.
 {¶ 14} Dr. Heather Raaf, of the coroner's office, testified Reeves suffered two gunshot wounds, one to the head and one through the back. Because of the lack of gunshot residue, Raaf opined the shooter was at least three feet away when the shots were fired. The bullets recovered from the victim's body were consistent with those belonging to a .45 caliber handgun.
 {¶ 15} Damon Clark turned himself in on November 8, 2002, when he learned police were looking for him. Damon Clark waived his Miranda rights and denied being at the murder scene. He told the police he was with his child's mother all night. All three Clark brothers were arrested in connection with the murder.
 {¶ 16} The jury found Damon Clark guilty of aggravated murder. The trial court sentenced him to the mandatory sentence of twenty years to life, with a consecutive three-year sentence for the firearm specification. Clark now appeals.
 {¶ 17} In his first assigned error, Damon Clark argues the trial court erred when it denied defense counsel's request for a jury instruction on involuntary and voluntary manslaughter.
 {¶ 18} In State v. Davis,[2] the Ohio Supreme Court held:
{¶ 19} "* * * merely because one offense can be a lesserincluded offense of another does not mean that a court mustalways instruct on both offenses where the greater offense ischarged. * * * The persuasiveness of the evidence regarding thelesser included offense is irrelevant. If under any reasonableview of the evidence it is possible for the trier of fact to findthe defendant not guilty of the greater offense and guilty of thelesser offense, the instruction on the lesser included offensemust be given. The evidence must be considered in the light mostfavorable to defendant."
 {¶ 20} Involuntary manslaughter is a lesser included offense of aggravated murder.[3] The difference between the two offenses is that aggravated murder requires a purpose to kill, while involuntary manslaughter requires only that a killing occurred as a proximate result of committing or attempting to commit a felony.[4] The evidence in the instant case indicated that Clark fired a gun directly at Reeves. Once Reeves fell to the ground, Clark shot him again in the back of the head. This evidence hardly supports an involuntary manslaughter charge. The trial court, therefore, did not err in refusing to give the instruction.
 {¶ 21} Damon Clark also argues the trial court erred by failing to instruct the jury on voluntary manslaughter. Voluntary manslaughter is considered an inferior degree of aggravated murder, since "`its elements are * * * contained within the indicted offense, except for one or more additional mitigating elements.'"[5] Before giving an instruction on voluntary manslaughter in a murder case, the trial court must determine "whether evidence of reasonably sufficient provocation occasioned by the victim has been presented to warrant such an instruction."[6] The initial inquiry requires an objective standard: "For provocation to be reasonably sufficient, it must be sufficient to arouse the passions of an ordinary person beyond the power of his or her control."[7] If this objective standard is met, the inquiry shifts to a subjective standard, to determine whether the defendant in the particular case "actually was under the influence of sudden passion or in a sudden fit of rage."[8]
 {¶ 22} Damon Clark argues that Reeves provoked him by acting as a back-up for Griffin during the fight between Griffin and Doug Clark. However, that is not sufficient provocation to warrant an instruction on voluntary manslaughter. Furthermore, it appears the provoking incident was Reeves' theft of Doug Clark's car speakers, which is also insufficient provocation to "arouse the passions of an ordinary person beyond the power of his or her control." Moreover, Damon Clark shot Reeves once, causing Reeves to fall to the ground; he then shot him again as Reeves lay on the ground, which demonstrates a purposeful killing.
 {¶ 23} Because the objective standard of provocation was not met, there is no need to determine if Damon Clark was "subjectively" sufficiently provoked to warrant a voluntary manslaughter instruction. Accordingly, Damon Clark's first assigned error is overruled.
 {¶ 24} In his second and third assigned errors, Damon Clark argues the evidence was insufficient to support his murder conviction; he also argues his conviction was against the manifest weight of the evidence. He argues that under both standards, the State failed to produce evidence of prior calculation.
 {¶ 25} Damon Clark was convicted of aggravated murder, in violation of R.C. 2903.01(A), which provides in pertinent part: "(A) No person shall purposely, and with prior calculation and design, cause the death of another[.]"
 {¶ 26} "Prior calculation and design" is not defined in the Ohio Revised Code, but it is considered to be more than just an instantaneous decision to kill.[9] In State v.Taylor,[10] the Ohio Supreme Court concluded that "it is not possible to formulate a bright-line test that emphatically distinguishes between the presence or absence of `prior calculation and design.'"[11] In State v.Jenkins,[12] the court set forth the following three factors that may be considered to determine if the murder was committed with prior calculation and design: (1) whether the accused and the victim knew each other, (2) whether there was thought or preparation in choosing the murder weapon or the murder site, and (3) whether the act was "drawn out" or "an almost instantaneous eruption of events." Prior calculation and design can be found even when the plan to kill was quickly conceived and executed.[13]
 {¶ 27} In the instant case, the State presented evidence that the Clark brothers suspected Reeves stole Doug Clark's car speakers, and they met to discuss the matter. Therefore, there was evidence that the parties knew each other. Prior to the murder, an altercation regarding the stereo equipment erupted between Doug Clark and Griffin, Reeves' friend. A second altercation occurred between Griffin and Doug Clark later that night. At the end of the second altercation, Damon Clark, with a gun in his hand, pursued Reeves. The evidence indicated Damon Clark did not usually carry a gun and that the gun, in fact, belonged to Damon Clark's brother, Doug. Damon Clark's obtaining possession of the gun indicates some prior thought to do harm to Reeves. After shooting Reeves, Damon Clark approached him and shot him in the back of his head, which occurred seconds after the victim was shot the first time. These factors indicate Damon Clark had formulated a plan to kill Reeves.
 {¶ 28} Upon a review of all the facts and circumstances surrounding Reeves' death, we conclude the evidence in this case was sufficient for any rational trier of fact to conclude that Damon Clark engaged in more than a mere "instantaneous deliberation" with respect to Reeves' murder.
 {¶ 29} Damon Clark's conviction was also not against the manifest weight of the evidence. Although Damon Clark's brother, Jimmie, received a favorable plea in exchange for his testimony, and Wilder and Bell were Reeves' friends, the jury was fully apprised of this information. Any credibility issues regarding their testimony was for the jury to resolve.[14]
Accordingly, Damon Clark's second and third assigned errors are overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Celebrezze, Jr., J., and Cooney, J., concur.
[1] For clarity, the Clark brothers' full names will be used in this opinion.
[2] (1983), 6 Ohio St.3d 91, 95.
[3] State v. Thomas (1988), 40 Ohio St.3d 213, paragraph one of the syllabus.
[4] State v. Jenkins (1984), 15 Ohio St.3d 164, 218.
[5] State v. Benge, 75 Ohio St.3d 136, 140, 1996-Ohio-227, quoting State v. Deem (1988), 40 Ohio St.3d 205, paragraph two of the syllabus.
[6] State v. Shane (1992), 63 Ohio St.3d 630, paragraph one of the syllabus.
[7] Id. at 635.
[8] Id.
[9] State v. Jones, 91 Ohio St.3d 335, 348, 2001-Ohio-57.
[10] (1997), 78 Ohio St.3d 15, 18-20.
[11] Id. at 20.
[12] (1976), 48 Ohio App.2d 99, 102.
[13] State v. Coley, 93 Ohio St.3d 253, 263, 2001-Ohio-1340, citing State v. Palmer, 80 Ohio St.3d 543, 567-568,1997-Ohio-312; State v. Green, 90 Ohio St.3d 352, 358,2000-Ohio-182.
[14] State v. DeHass (1967), 10 Ohio St.2d 230.