OPINION
{¶ 1} Appellant Matt I. Marcum challenges his conviction on one count of felonious assault. The charge arose after Appellant attacked his wife and fired a number of gunshots at her both inside their trailer and while she was driving away. Appellant argues that evidence retrieved from his trailer should have been suppressed because the police violated the knock-and-announce rule when executing their arrest warrant. The U.S. Supreme Court recently ruled that evidence obtained in violation of the knock-and-announce rule is not required to be suppressed. Furthermore, exigent circumstances existed to excuse the officers from following the knock-and-announce rule. Appellant also argues that statements he made over the telephone to the police should have been suppressed because the statements were not properly authenticated at trial. The record reveals that Appellant identified himself during the phone call and that it was otherwise properly authenticated. Finally, Appellant argues that the trial court should have sustained his motion for a jury instruction on the inferior degree offense of aggravated assault. The record reflects that there is no reasonable interpretation of the evidence to support the conclusion that Appellant acted in a sudden rage or heat of passion provoked by the victim, which is part of the definition of aggravated assault, and that the trial court was correct in denying Appellant's motion. Appellant's three assignments of error are without merit, and the judgment of the Columbiana County Court of Common Pleas is affirmed.
 FACTS AND PROCEDURAL HISTORY {¶ 2} On September 14, 2003, Amy Marcum, Appellant's wife, drove to the Leetonia Police Department and reported that Appellant had attacked her at their home and fired shots at her and her three-year-old son while they were fleeing in the family van. She had visible injuries, and the police identified bullet holes in the van. The Leetonia police immediately requested assistance from Chief Shelby Blakeman of Washingtonville, from the Columbiana County Sheriff's Department, and from the Columbiana County Prosecutor's Office.
 {¶ 3} Amy Marcum apprised the police that Appellant was intoxicated, was taking nitroglycerin for a heart condition, and was complaining of chest pains when she left. Mrs. Marcum gave Chief Blakeman her home phone number, and he called the number to determine if Appellant needed medical care. Chief Blakeman identified himself and asked to speak to Matt Marcum, to which Appellant responded: "This is Matt." (2/24/04 Tr., p. 11.) Appellant then proceeded to tell Chief Blakeman that he knew he was going to jail for shooting at Mrs. Marcum, and that he fired shots from the house. (2/24/04 Tr., p. 12.) He also stated, "[i]f someone came back to the house tonight, somebody was gonna die." (2/24/04 Tr., p. 12.)
 {¶ 4} An arrest warrant was issued, and the regional Special Response Team ("SRT") went to Appellant's residence to execute the warrant. The SRT believed Appellant to be armed and dangerous. Upon arriving at the residence, the members of the SRT took up positions around the house. The SRT was prepared to use a battering ram to enter the house. Deputy Willie Coleman shouted "Sheriff's Office," waited five to ten seconds for a response, and then hit the front door with the battering ram when there was no response. The officers also threw an explosive 3device, known as a "flash bang" grenade or percussion grenade, through one of the windows in the home. (2/19/04 Tr., p. 16.) The officers found Appellant asleep in his bed with a handgun lying next to him. They arrested Appellant and confiscated the gun as evidence.
 {¶ 5} On October 31, 2003, the Columbiana County Grand Jury issued a two-count indictment against Appellant. Count one was for felonious assault, a second degree felony pursuant to R.C. § 2903.11(A)(1). The second count was for arson, involving a separate incident that occurred on June 21, 2003. On December 22, 2003, the two counts were severed for purposes of trial. Appellant pleaded not guilty to the charges and obtained private counsel.
 {¶ 6} On February 3, 2004, Appellant filed a motion to suppress any oral statements he made to the police, including any statements he made to Chief Blakeman. A hearing was later held on this motion.
 {¶ 7} Also on February 3, 2004, Appellant filed a motion to suppress the evidence that was seized during his arrest, including the 9mm handgun found on his bed. A hearing was also held on this motion.
 {¶ 8} On March 5, 2004, the trial court filed a journal entry overruling the motion to suppress the handgun, and partially overruling the motion to suppress statements made to the police.
 {¶ 9} The case went to jury trial on October 4, 2004. At the close of the evidence, Appellant made an oral motion that the jury be instructed on the inferior degree offense of aggravated assault. The motion was overruled. The jury returned a guilty verdict on October 6, 2004, on one count of felonious assault. A sentencing hearing was held November 18, 2004, and the trial court imposed a six-year prison term.
 ASSIGNMENT OF ERROR NO. 1 {¶ 10} "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT WHEN IT DENIED APPELLANT'S MOTION TO SUPPRESS AND PERMITTED INTO EVIDENCE ITEMS SEIZED FROM THE PERSONAL RESIDENCE IN VIOLATION OF THEFOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION AS WELL AS THE FOURTH AMENDMENT OF THE OHIO CONSTITUTION."
 {¶ 11} On February 3, 2004, Appellant filed a motion to suppress all physical evidence seized from his home after the police executed their arrest warrant by knocking down his front door and throwing a percussion grenade through the living room window. Appellant argues that the police action violated the statutory "knockand-announce" rule found in R.C. § 2935.12(A):
 {¶ 12} "(A) When making an arrest or executing an arrest warrant or summons in lieu of an arrest warrant, or when executing a search warrant, the peace officer, law enforcement officer, or other authorized individual making the arrest or executing the warrant or summons may break down an outer or inner door or window of a dwelling house or other building, if, after notice of his intention to make the arrest or to execute the warrant or summons, he is refused admittance, but the law enforcement officer or other authorized individual executing a search warrant shall not enter a house or building not described in the warrant."
 {¶ 13} Appellant argues that the statutory rule codifies rulings of the United States Supreme Court, such as Wilson v. Arkansas (1995),514 U.S. 927, 115 S.Ct. 1914, 131 L.Ed.2d 976, and Miller v.United States (1958), 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332. These cases established that "reasonableness," under the Fourth Amendment protection against unreasonable searches and seizures, requires police officers to knock on the door and announce their presence before forcibly entering a residence. Once an officer has properly knocked and announced his presence, he may enter the premises upon refusal to admit. State v.Dixon (2001), 141 Ohio App.3d 654, 660, 752 N.E.2d 1005. Officers may also enter the premises once a reasonable period of time has elapsed. Id.
 {¶ 14} The trial court ruled that the police violated the knock-and-announce rule by breaking the door down after only five to ten seconds, and by failing to announce that they were there to execute an arrest warrant. (Oct. 7, 2004 Opinion, p. 2.) The trial court found, though, that exigent circumstances excused the officers' actions. The trial court found that Appellant was known to have earlier fired shots inside the house and that the officers' safety was at stake, constituting exigent circumstances. The trial court concluded that Appellant's constitutional rights had not been violated and that no evidence should be suppressed.
 {¶ 15} The United States Supreme Court has very recently held that the suppression of evidence is not an applicable remedy for a violation of the constitutional knock-and-announce rule. Hudson v. Michigan (2006),547 U.S. ___, 126 S.Ct. 2159, 165 L.Ed.2d 56. In Hudson, the police obtained a warrant to search for drugs and weapons. When the police arrived at the house, they waited only three to five seconds before opening the door. The defendant moved to have all inculpatory evidence deriving from the search warrant suppressed due to the allegedFourth Amendment violation. The Michigan trial court granted the motion, and this decision was overruled in the Michigan Court of Appeals. The Michigan Supreme Court declined to accept the case for review. The case was accepted by the United States Supreme Court, which concluded that the, "interests protected by the knock-and-announce requirement * * * do not include the shielding of potential evidence from the government's eyes." Id. Hudson reasoned that the knock-and-announce rule was meant to protect against injury due to the sudden appearance of police inside a home, or to protect against the invasion of privacy and dignity that can be destroyed by a sudden entrance. Hudson further held that, "the knock-and-announce rule has never protected * * * one's interest in preventing the government from seeing or taking evidence described in a warrant." Id. The Hudson Court specifically held that, "the exclusionary rule is inapplicable," to violations of the knock-and-announce rule. Id. Based on Hudson, no evidence should have been suppressed due to a violation of the knock-and-announce rule.
 {¶ 16} Even if Hudson does not apply to the instant appeal, the parties agree that a police officer is excused from following the "knock and announce" rule when exigent circumstances exist. See State v.Furry (1971), 31 Ohio App.2d 107, 113, 286 N.E.2d 301; Hall v.Shipley (C.A.6, 1991), 932 F.2d 1147, 1151. The validity of exigent circumstances is decided on a case-by case basis. State v. DeFiore
(1979), 64 Ohio App.2d 115, 119, 411 N.E.2d 837.
 {¶ 17} It is well-settled that, "where officers hold a reasonable belief that they are in danger of bodily harm or that suspects are trying to escape or destroy evidence, compliance with the knock-and-announce principle is excused." Gaston v. Toledo (1995),106 Ohio App.3d 66, 75, 665 N.E.2d 264. It is clear from the record that the police came to Appellant's home to arrest him for a violent crime involving a firearm. The officers were aware that shots had already been fired. (2/19/04 Tr., p. 11.) They were aware that Appellant had fired a shot in the home and had fired multiple shots at an occupied motor vehicle. They were aware that he was still armed. (2/19/04 Tr., p. 11.) Their reasonable belief of danger was not a ruse or pretext. They took a number of precautions in executing the arrest warrant, including the use of body armor. They came prepared to use a battering ram and explosive devices to gain entry into the home. After forcibly entering the home, they found Appellant lying in bed with a handgun at his side, and there was an odor of alcohol on him. Officers removed the handgun and then arrested him. Their reasonable belief of danger was shown to be justified by the existence of the gun and the evidence of multiple gunshots subsequently recovered from the crime scene.
 {¶ 18} From the overwhelming evidence admitted at the suppression hearing, it was clear that the police had a reasonable belief of danger when executing the arrest warrant. This provided exigent circumstances to excuse the requirements of the knock-and-announce rule. For all the aforementioned reasons, Appellant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. 2 {¶ 19} "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT WHEN IT PERMITTED INTO EVIDENCE ORAL STATEMENTS ALLEGEDLY MADE BY THE APPELLANT."
 {¶ 20} Appellant argues that certain statements he made during a telephone call with Chief Blakeman should have been suppressed because the state never authenticated that Appellant was actually the person speaking on the phone. The phone call was obviously an important piece of the evidence, because during the call, Appellant admitted that he tried to shoot Mrs. Marcum. Appellant has not raised any Fourth orFifth Amendment issues on appeal regarding the phone call that would require the suppression of evidence, and it appears that the question on appeal is actually whether the trial court abused its discretion by not excluding the telephone call pursuant to the authentication requirements of Evid. R. 901. Authentication deals with reliability and relevance of evidence, rather than with the possible violation of constitutional rights that might require the suppression of evidence to preserve those rights. State v. Brown, 151 Ohio App.3d 36, 2002-Ohio-5207,783 N.E.2d 539, ¶ 36.
 {¶ 21} "Ordinarily, a trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence." Rigby v. Lake County (1991), 58 Ohio St.3d 269, 271,569 N.E.2d 1056.
 {¶ 22} Evid. R. 901(A) states: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."
 {¶ 23} Evid. R. 901(B) provides a number of examples of valid authentication, "[b]y way of illustration only, and not by way of limitation * * *." Evid. R. 901(B)(6) provides an example of how to authenticate a telephone conversation:
 {¶ 24} "(6) Telephone conversations. Telephone conversations, by evidence that a call was made to the number assigned at the time by the telephone company to a particular person or business, if (a) in the case of a person, circumstances, including self-identification, show the person answering to be the one called, or (b) in the case of a business, the call was made to a place of business and the conversation related to business reasonably transacted over the telephone."
 {¶ 25} The staff notes to Evid. R. 901 clarify how a telephone call may be authenticated:
 {¶ 26} "Thus if the testifying witness testifies that he dialed a number listed under the name of a particular person, and the person answering the phone identified himself as the person listed in the directory, then the testifying witness may testify as to the contents of the call; that is, `self-identification' (of the person called) is sufficient authentication." (Staff notes to Evid. R. 901(B)(6)).
 {¶ 27} In the instant case, Mrs. Marcum provided Chief Blakeman with her home phone number, which was also Appellant's home phone number. Chief Blakeman dialed the number, identified himself, and asked to speak with Matt Marcum, who then identified himself:
 {¶ 28} "Q. [Prosecutor Gamble] Okay. Can you describe to us then what took place when you dialed the Marcum number?
 {¶ 29} "A. [Chief Blakeman] Mr. Marcum answered the phone, sounded very intoxicated, and he explained to me, you know, I asked him if, you know, he was okay, if he was experiencing any chest pains, do you need medical attention, are you all right? And he just said that he had been drinking, obviously.
 {¶ 30} "Q. Did he — did you identify yourself?
 {¶ 31} "A. Yes, I did.
 {¶ 32} "Q. Okay, and do you recall how you identified yourself?
 {¶ 33} "A. I told him that I was Chief Blakeman from Washingtonville Police Department, that I was assisting Leetonia.
 {¶ 34} "Q. All right. And did you ask to speak to Matt Marcum, or did you ask him to identify himself?
 {¶ 35} "A. I asked for Matt Marcum, and he said, `This is Matt.'
 {¶ 36} "Q. All right. I'm sorry to interrupt you.
 {¶ 37} "A. Yeah. And uh, at that point he says, `I — He said, `I know why you're calling, I'm going to go to jail.' You know, he says, `I missed, I'd have shot the bitch.' And this is basically the gist of it." (2/24/04 Tr., pp. 11-12.)
 {¶ 38} This evidence, if believed by the trial court, was sufficient to authenticate that Matt Marcum was the person speaking on the phone. One of the residents of the home (Mrs. Marcum) provided the phone number, and another resident of the home (Appellant) answered the phone and identified himself. This is at least as reliable a method of authenticating a phone call as that provided in the illustration in Evid. R. 901, which involves a person looking up the number in a phone directory and having the person who answers the phone identify himself or herself. Therefore, the trial court did not abuse its discretion in accepting that the phone call was properly authenticated, and Appellant's second assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. 3 {¶ 39} "THE TRIAL COURT ABUSED ITS DISCRETION TO THE PREJUDICE OF APPELLANT WHEN IT FAILED TO GRANT APPELLANT'S REQUEST FOR A CHARGE OF THE LESSER INCLUDED OFFENSE OF AGGRAVATED ASSAULT."
 {¶ 40} Appellant argues that the trial court should have given a jury instruction on the lesser included offense of aggravated assault. It should first be clarified that aggravated assault is not a lesser included offense of felonious assault, but is an inferior degree offense, meaning that, "its elements are identical to those of felonious assault, except for the additional mitigating element of serious provocation." State v. Deem (1988), 40 Ohio St.3d 205, 210-211,533 N.E.2d 294. The elements of felonious assault and aggravated assault are essentially identical, except for the additional mitigating circumstance in aggravated assault that the defendant was, "under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is sufficient to incite the person into using deadly force * * *." R.C. § 2903.12(A).
 {¶ 41} Appellant contends that a jury instruction should be given for an inferior degree offense, "if under any reasonable view of the evidence, and when all of the evidence is construed in a light most favorable to the defendant, a reasonable jury could find that the defendant had established by a preponderance of the evidence the existence of one or both of the mitigating circumstances." State v.Rhodes (1992), 63 Ohio St.3d 613, 617-618, 590 N.E.2d 261.
 {¶ 42} Appellant preserved this issue for review by requesting an instruction on the inferior degree offense, which was denied. (Tr., pp. 599-601.)
 {¶ 43} When reviewing a trial court's jury instructions, the proper standard of review for an appellate court is whether the trial court's refusal to give a requested jury instruction constituted an abuse of discretion under the facts and circumstances of the case. State v.Wolons (1989), 44 Ohio St.3d 64, 68, 541 N.E.2d 443. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.State v. Clark (1994), 71 Ohio St.3d 466, 470, 644 N.E.2d 331.
 {¶ 44} When a defendant requests an instruction on an inferior degree offense, the burden is on the defendant to persuade the factfinder of the mitigating elements of the offense. See State v. Hill (1996),108 Ohio App.3d 279, 284, 670 N.E.2d 555; State v. Rhodes (1992),63 Ohio St.3d 613, 590 N.E.2d 261, syllabus. It is axiomatic that the burden is also on Appellant to establish reversible error on appeal.
 {¶ 45} Appellant took the stand in his own defense. He testified that he thought someone was stealing his van, so he took his gun and ran outside. (Tr., p. 551.) He testified that the van was coming toward him, and he fired some shots in self-defense, or possibly as warning shots. (Tr., p. 583.) Special Agent Ed Carlini also noted that the bullet hole in the hood of the van likely indicated that Appellant was either walking toward the van, or that the van was moving toward him, when the shots were fired. (Tr., p. 425.) This is the evidence Appellant relies on in support of his claim that the trial court should have given an instruction on aggravated assault.
 {¶ 46} Appellant's argument is unpersuasive. Appellant never testified that he was afraid, that he was provoked, that he was in a rage, or anything similar to these emotions. Appellant did claim that he shot in self-defense, but a self-defense theory is usually contradictory to proof of sudden passion or rage. State v. Baker (1996),111 Ohio App.3d 313, 324, 676 N.E.2d 143. Self-defense requires proof that the defendant had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force. See State v. Robbins (1979), 58 Ohio St.2d 74,388 N.E.2d 755, paragraph two of the syllabus. These elements have nothing to do with whether a person is in a sudden fit of passion or sudden rage.
 {¶ 47} Appellant also testified that the shots he fired were meant to be warning shots. (Tr., p. 573.) Firing a warning shot implies rational and objective thought, not passion and rage. This testimony is also inconsistent with the elements of aggravated assault.
 {¶ 48} Even if one could construe that Appellant had a moment of fear in seeing the van coming toward him, fear alone is not a basis for establishing the mitigating circumstances of aggravated assault.State v. Mack (1998), 82 Ohio St.3d 198, 201, 694 N.E.2d 1328. It should be repeated that Appellant never testified that he was afraid during any of the events involved in the shots being fired at the van.
 {¶ 49} Even if we could surmise that the alleged theft of the van was the provocation for firing the shots, it is clear that theft of personal property is not the type of provocation that satisfies the provocation element in aggravated assault. State v. Clark, 8th Dist. No. 83474,2004-Ohio-5964 (the theft of defendant's car by the victim was not the type of provocation warranting a jury instruction on an inferior degree offense).
 {¶ 50} Appellant also testified that he got into a slight argument with his wife over some money prior to the shooting. (Tr., p. 545.) A single argument, or even a history of arguments, with another person is not sufficient provocation to satisfy the requirements of aggravated assault. State v. Serrano, 164 Ohio App.3d 103, 2005Ohio-5606,841 N.E.2d 368, ¶ 23.
 {¶ 51} Appellant's testimony completely contradicts any theory of sudden passion or sudden rage sufficient to provoke deadly force. Appellant spoke about a minor argument with his wife, "nothing to amount to much." (Tr., p. 547.) According to Appellant, it was Amy Marcum who brought the gun into the living room, and the shot in the living room supposedly occurred as they were wrestling over the gun. (Tr., p. 549.) There is no indication of any passion or rage on Appellant's part involved in the incident. Concerning the two shots into the van, Appellant again provided no testimony of anger, rage, or sudden passion. In fact, he very clearly established that, during the time period of the crime, he was calm, was not provoked by anything his wife said or did, was clear-headed, and did not intend to hurt anyone when he shot at the van. His account of the events is that he either fired warning shots or fired in self-defense, neither of which is consistent with sudden rage or sudden passion brought on by serious provocation. Appellant points to nothing in the record that could remotely establish a sudden passion or rage brought on by sufficient provocation, and therefore, this assignment of error is overruled.
 {¶ 52} In conclusion, the record fully supports the trial court's decision on both the evidentiary and jury instruction questions. The U.S. Supreme Court has held that suppression of evidence is not appropriate as a remedy to violations of the knock-and-announce rule.Hudson, supra. Furthermore, the police had exigent circumstances for violating the knock-and-announce rule. The phone call in which Appellant admitted shooting at his wife was properly authenticated. Finally, there was no proof of provocation and passion or rage that would have warranted a jury instruction on aggravated assault. All three assignments of error are overruled, and the judgment of trial court is hereby affirmed in full.
Donofrio, P.J., concurs.
Vukovich, J., concurs.