JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Norris Phillips appeals his conviction from the Cuyahoga County Court of Common Pleas after a jury found him guilty of murder. Finding no error in the proceedings below, we affirm.
 {¶ 2} Phillips was charged with aggravated murder in violation of R.C.2903.01. The charge arose out of an incident that occurred on January 11, 2006, in the evening, in the area of 11921 Miles Avenue, Cleveland, Ohio. The victim was Bryan Patterson.
 {¶ 3} At trial, the evidence revealed that the victim was killed by an incised wound to the neck. The wound was the result of one cut from ear to ear under the victim's jaw with a very sharp razor or knife. The victim bled to death, and was deprived of air because of the wound, causing him to go into cardiac and respiratory arrest.
 {¶ 4} That evening, the victim, his brother Darnell Patterson, and the victim's friend David Crump had planned on going out to a bar known as RD's. Before they got to RD's, however, the victim received a call from his mother telling him that his cousin, Bobby Collier, was "jumped up on Miles." After the call, the three went to the victim's grandmother's house on Miles and walked to Poochy's Deli, where Collier had been jumped. They went to talk to Deante, who had split Collier's ear by smacking him with a gun. They claimed that they planned to resolve the matter without fighting. *Page 4 
 {¶ 5} When they arrived at Poochy's Deli, there were 20 to 30 people out on the street and several fights going on. More of the Patterson family came down the street to see what was happening. The victim's mother, grandmother, uncle, cousin, and two younger sisters were there.
 {¶ 6} According to some witnesses, the victim had words with Nyarry Killingsworth, but there was no physical altercation. The victim believed that Killingsworth had robbed him a year earlier.
 {¶ 7} Killingsworth nevertheless testified that the victim stabbed him in the stomach twice. He testified that he ran when gunshots went off and did not see the victim get his throat slit. Killingsworth was treated at Marymount Hospital and then spoke with the Cleveland police regarding the incident.
 {¶ 8} Darnell testified that he did not fight anyone in particular and that he and his family were just defending themselves. Darnell testified that he saw the victim and Phillips, whom he knew from high school, fighting. He saw Phillips hit the victim from behind and watched the victim fight back. Darnell testified that the crowd kept fighting until gunshots were heard. After the gunshots, Darnell saw Phillips creep up on the victim. Darnell tried to warn his brother, but when the victim turned around, Phillips cut his throat. Darnell tried to chase Phillips, but he just blended into the crowd.
 {¶ 9} Crump testified that he was present with the victim that evening, and saw the victim and Phillips fighting. Acording to Crump, when they heard the *Page 5 
gunshots, he and the victim took off running. They ran into Phillips again, and Phillips and the victim exchanged words. Crump turned to check his surroundings. When he looked back, Phillips was swinging towards the victim's neck, and then the victim started bleeding from his throat. The victim jerked back, grabbed his neck, and collapsed in Crump's arms. Phillips threw his hood over his head and took off running. Crump identified Phillips in a photo array. Charmaine Patterson, the victim's 15-year-old sister, was also present that night. She testified that she saw the victim and Phillips having words with each other. Charmaine knew Phillips from the basketball courts at Miles Elementary School. She testified that she ran after hearing the gunshots. Charmaine stated that she saw Phillips swipe once at her brother, causing him to fall back. She testified that she started to scream and Phillips immediately ran away. Charmaine also identified Phillips in a photo array.
 {¶ 10} William Patterson, the victim's uncle, testified that he was present that evening because Collin was his son, and he was trying to resolve the situation between Collin and Deante. He stated that he heard a gunshot go off, and that he turned to Crump and saw his nephew falling.
 {¶ 11} Charletha Patterson, the victim's mother, testified that she was there that evening. She testified that after she heard the gunshot, she saw her son falling to the ground and blood coming from his neck.
 {¶ 12} Phillips took the stand in his defense. He testified that he went to Poochy's Deli that evening with two friends to pick up a polish boy sandwich from *Page 6 
the deli. He stated that when they arrived, an altercation had already begun outside the deli. Phillips testified that when he was trying to break up a fight, he was hit in his left jaw. Phillips testified that after getting back up, he began to run away because of the gunshots. He stated that the victim chased after him. Phillips testified that he had a pocketknife with a 2-to 2½-inch blade. Phillips testified that the victim swung at him and he swung back and then ran away. Phillips stated that he did not remember using the knife or even connecting with the victim. Phillips ran away.
 {¶ 13} Phillips was found not guilty of aggravated murder but guilty of the lesser included offense of murder. He was sentenced to 15 years to life. Phillips appeals, advancing four assignments of error for our review. His first assignment of error states the following:
 {¶ 14} "The admission of the unreliable photo array violated Norris Phillips' due process right to a fair trial."
 {¶ 15} Phillips argues that the photo array should have been suppressed because it was unduly suggestive. He asserts that the detectives should have changed the order of the photographs with each witness. He also argues that the witnesses were unreliable and uncertain.
 {¶ 16} Appellate review of a suppression ruling involves mixed questions of law and fact. See State v. Burnside, 100 Ohio St.3d 152,2003-Ohio-5372. When ruling on a motion to suppress, the trial court serves as the trier of fact and is the primary *Page 7 
judge of the credibility of the witnesses and the weight of the evidence. See State v. Fanning (1982), 1 Ohio St.3d 19, 20. An appellate court must accept the trial court's findings of fact as true if they are supported by competent and credible evidence. Burnside, supra, at ¶ 8. But the appellate court must then determine, without any deference to the trial court, whether the facts satisfy the applicable legal standard. Id.
 {¶ 17} Due process requires that a court "suppress an identification of the suspect if the confrontation was unnecessarily suggestive of the suspect's guilt and the identification was unreliable under all circumstances." State v. Murphy (2001), 91 Ohio St.3d 516, 534,2001-Ohio-112, citing State v. Waddy (1992), 63 Ohio St.3d 424, 438. The defendant has the burden to show that the identification procedure was unduly suggestive. State v. Harris, Montgomery App. No. 19796,2004-Ohio-3570. If the defendant meets that burden, the court must then consider whether the identification, viewed under the totality of the circumstances, is reliable despite its suggestive character. Id., citingState v. Wills (1997), 120 Ohio App.3d 320, 324.
 {¶ 18} If the pretrial confrontation procedure was not unduly suggestive, any remaining questions as to reliability go to the weight of the identification, not its admissibility, and no further inquiry into the reliability of the identification is required. Wills, supra, at 325. If the court finds the procedure is suggestive, then it must assess the reliability of the identification, considering (1) the witness's opportunity to view the defendant at the time of the incident, (2) the witness's degree of attention, *Page 8 
(3) the accuracy of the witness's prior description, (4) the witness's certainty when identifying the suspect at the time of the confrontation, and (5) the length of time elapsed between the crime and the identification. State v. Davis, 76 Ohio St.3d 107, 113, 1996-Ohio-414.
 {¶ 19} At the suppression hearing, the detective who created the photo array at issue testified to the procedure involved in constructing the photo array and the process of having witnesses view the photo array. In this instance, Phillips' driver's license photo was used. The detective testified that he went through several hundred photos looking for people with similar characteristics. The final photo array contained six photos of males with similar characteristics. Phillips was in photo number two for all three witnesses. Each witness viewed the photo array on separate days and identified Phillips without hesitating.
 {¶ 20} Phillips argues that the photo array was unduly suggestive because each witness could have told the other witnesses which picture to identify. In essence, Phillips argues that the detective should have changed Phillips' position after each identification.
 {¶ 21} The trial court found that the photo array was not unduly suggestive and we agree. There is nothing in the record to imply that the witnesses spoke with one another and told each other which photo to pick, or that the detective prompted the witnesses' identification of Phillips. Two of the three witnesses who identified Phillips as the perpetrator testified at trial. Both stated that they knew Phillips. *Page 9 
 {¶ 22} We find that the trial court did not err when it denied Phillips' motion to suppress. Accordingly, Phillips' first assignment of error is overruled.
 {¶ 23} Phillips' second assignment of error states the following:
 {¶ 24} "Norris Phillips was deprived of effective assistance of counsel, thereby being deprived of a fair trial."
 {¶ 25} Phillips asserts numerous reasons why he believes his trial counsel was ineffective. First, he argues that his attorney failed to object to irrelevant and inflammatory evidence throughout the state's cross-examination of Phillips. Second, Phillips argues that his attorney coerced him into taking the witness stand, in violation of his Fifth Amendment right not to testify. Third, Phillips alleges that his attorney violated his right to a fair trial because he forced him to argue that he acted in self-defense. Fourth, Phillips argues that his attorney should have asked for the lesser included offense of involuntary manslaughter, and reckless homicide. Finally, Phillips contends that his attorney should have requested an instruction on the inferior offense of voluntary manslaughter.
 {¶ 26} In order to substantiate a claim of ineffective assistance of counsel, the appellant is required to demonstrate that (1) the performance of defense counsel was seriously flawed and deficient and (2) the result of the appellant's trial or legal proceeding would have been different had defense counsel provided proper representation.Strickland v. Washington (1984), 466 U.S. 668; State v. Brooks (1986),25 Ohio St.3d 144. Judicial scrutiny of defense counsel's performance must *Page 10 
be highly deferential. Strickland, 466 U.S. at 689. In Ohio, there is a presumption that a properly licensed attorney is competent. State v.Calhoun, 86 Ohio St.3d 279, 1999-Ohio-102.
 {¶ 27} Failure to object to error, alone, is not sufficient to sustain a claim of ineffective assistance. State v. Fears, 86 Ohio St.3d 329,1999-Ohio-111; State v. Clark, Cuyahoga App. No. 88731, 2007-Ohio-3777. Phillips argues that his trial attorney should have objected when the state questioned Phillips about quitting his job and preparing for football and college, 13 months before he was scheduled to start. Phillips argues that the questions were intended to inflame the jury. Phillips asserts that the state "attempted and did a good job at making Norris Phillips appear like a lazy bum, who simply quit work, a parasite, who is on vacation from work."
 {¶ 28} We find that Phillips' trial counsel was not ineffective when he did not object to some of the questions posed to Phillips. Phillips' character was at issue and Evid.R. 404(A)(1) specifically states that "evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same is admissible." Phillips tried to portray himself as a law-abiding citizen who worked for his grandmother's day care, and that he planned to attend college and play football.
 {¶ 29} Next, Phillips argues that his attorney coerced him into taking the witness stand by telling him that the judge said Phillips was losing the case and needed to take the stand. Phillips asserts that he wanted to exercise his Fifth Amendment right not to testify. *Page 11 
 {¶ 30} The Fifth Amendment provides that every defendant enjoys the right not to testify at trial. When Phillips took the stand at trial, his attorney asked him the following:
 {¶ 31} "Q.: Are you nervous about this trial?
 {¶ 32} A.: Yes.
 {¶ 33} Q.: Are you nervous about testifying?
 {¶ 34} A.: Yes.
 {¶ 35} Q.: You understand you didn't have to testify?
 {¶ 36} A.: Yes.
 {¶ 37} Q.: You wanted to testify and tell the jury your story?
 {¶ 38} A.: Yeah."
 {¶ 39} Phillips did not claim he was coerced into testifying until his sentencing hearing. At the hearing, defense counsel denied Phillips' accusations, stating as follows: "I deny those accusations. My client denied his guilt. He took the stand and he testified to that. That's what happened in this trial. Unfortunately, the jury convicted him." The trial court let both Phillips and his mother speak to the court about their allegations. The trial court pointed out to Phillips that he had numerous opportunities to tell the court that his attorney was forcing him to testify but failed to do so. Phillips agreed. It is our determination that there was no credible evidence presented that established that Phillips was forced to testify. See, also, State v.Schlee (Sept. 22, 2000), Lake App. No. 99-L-112. *Page 12 
 {¶ 40} Furthermore, it is well established that even debatable trial tactics and strategies do not constitute a denial of effective assistance of counsel. State v. Clayton (1980), 62 Ohio St.2d 45, 49. We find that even if Phillips had not taken the stand in his defense, the result would not have been different. Therefore, Phillips' attorney was not ineffective.
 {¶ 41} Next, Phillips alleges that his attorney violated his right to a fair trial because his attorney forced him to argue that he acted in self-defense. Phillips asserts that "once Norris Phillips opened his mouth to testify based on counsel's pressure to take the stand, he put his foot in his mouth. * * * He was pressured to take a self-defense position, owning up to having a knife."
 {¶ 42} As previously stated, even debatable trial tactics do not constitute a denial of effective assistance of counsel. Phillips testified that the victim attacked him first and that he swung at the victim to defend himself. Phillips also admitted to having a knife with him that evening. Further, several witnesses testified that they saw Phillips swing at the victim and then they saw blood coming from his neck. Finally, some of the witnesses testified that Phillips and the victim were having words. We find that it was not ineffective assistance of counsel to argue self-defense.
 {¶ 43} Phillips also complains that his attorney should have asked for the lesser included offense of involuntary manslaughter because the death occurred *Page 13 
during the commission of a misdemeanor (i.e., carrying a concealed weapon) in violation of R.C. 2903.04(B).
 {¶ 44} An instruction on a lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense. State v. Thomas (1988), 40 Ohio St.3d 213, 533 N.E.2d 286, paragraph two of the syllabus. We find that the evidence adduced at trial could not have reasonably supported both an acquittal on the crime charged and a conviction for involuntary manslaughter, as the death did not result from the commission of a misdemeanor. Moreover, the failure to request such an instruction does not constitute ineffective assistance of counsel, as Phillips contends. Phillips also contends that his attorney should have requested an instruction on reckless homicide. Again, we find no merit to Phillips' argument. The evidence at trial did not substantiate a claim that Phillips acted with "heedless indifference to consequences." The testimony indicated that the victim was cut from ear to ear with a razor-sharp knife. The cut was right to his spinal column. Phillips had a knife and was seen by several witnesses making a slashing or swinging motion across the victim's neck.
 {¶ 45} Finally, Phillips claims that his attorney should have requested an instruction on the inferior offense of voluntary manslaughter. Voluntary manslaughter is defined as "no person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation *Page 14 
occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another." R.C. 2903.03(A).
 {¶ 46} Before giving an instruction on voluntary manslaughter in a murder case, the trial court must determine "whether evidence of reasonably sufficient provocation occasioned by the victim has been presented to warrant such an instruction. The initial inquiry requires an objective standard: For provocation to be reasonably sufficient, it must be sufficient to arouse the passions of an ordinary person beyond the power of his or her control. If this objective standard is met, the inquiry shifts to a subjective standard, to determine whether the defendant in the particular case actually was under the influence of sudden passion or in a sudden fit of rage." State v. Clark, Cuyahoga App. No. 83474, 2004-Ohio-5964 (internal citations and quotations omitted).
 {¶ 47} In this case, there is no evidence that the victim provoked Phillips into using deadly force. Even if we were to believe that the victim had a knife, Phillips did not testify that he was under the influence of sudden passion or a sudden fit of rage. He did not testify that he was enraged. Rather, he testified that the victim swung at him and he swung back in self-defense. An instruction for voluntary manslaughter was not supported by the evidence. See State v.Collins (1994), 97 Ohio App.3d 438 (defendant did not testify he was provoked, angry or had lost control of his temper). Defendant's "claim that he feared for his own safety did not constitute sudden passion or rage" under the statute. State v. Caldwell (Dec. 17, 1998), *Page 15 
Franklin App. No. 98AP-165 (defendant acted out of fear rather than rage). Therefore, Phillips' counsel was not ineffective when he did not request an instruction on the inferior degree offense of voluntary manslaughter. Accordingly, Phillips' second assignment of error is overruled.
 {¶ 48} Phillips' third assignment of error asserts the following:
 {¶ 49} "The evidence produced at trial was legally insufficient to support a finding of guilty."
 {¶ 50} When an appellate court reviews a record upon a sufficiency challenge, "`the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" State v. Leonard, 104 Ohio St.3d 54, 67,2004-Ohio-6235, quoting State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 51} Phillips was found guilty of murder in violation of R.C.2903.02(A), which states the following:
 {¶ 52} "No person shall purposely cause the death of another * * *."
 {¶ 53} Phillips admitted to being there that evening. He admitted to having a knife and swinging at the victim. Further, several witnesses testified that they saw Phillips swing at the victim and then saw the victim fall back, bleeding from his neck. We find that there is sufficient evidence to prove the essential elements of the crime *Page 16 
beyond a reasonable doubt. Accordingly, Phillips' third assignment of error is overruled.
 {¶ 54} Phillips' fourth assignment of error alleges the following:
 {¶ 55} "The aforestated [sic] errors were all plain error."
 {¶ 56} Under Crim.R. 52(B), "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." This rule "places three limitations on a reviewing court's decision to correct an error despite the absence of a timely objection at trial. First, there must be an error, i.e., a deviation from a legal rule. Second, the error must be plain. * * * [The] error must be an `obvious' defect in the trial proceedings. Third, the error must have affected `substantial rights.' * * * [T]he trial court's error must have affected the outcome of the trial." State v. Barnes, 94 Ohio St.3d 21,27, 2002-Ohio-68 (internal citations and quotations omitted). Further, the decision to correct a plain error is discretionary and should be made "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Id., citing State v.Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus.
 {¶ 57} Since we found that all of the alleged errors lacked merit, clearly there is no plain error. Accordingly, Phillips' fourth assignment of error is overruled.
Judgment affirmed.
 It is ordered that appellee recover from appellant costs herein taxed. *Page 17 
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
SEAN C. GALLAGHER, PRESIDING JUDGE
 CHRISTINE T. MCMONAGLE, J., and MARY J. BOYLE, J., CONCUR *Page 1